DeVITIS *v.* NEWCOMB-ENDICOTT CO.

1. MALICIOUS PROSECUTION—WANT OF PROBABLE CAUSE—BURDEN OF PROOF.

   In action for malicious prosecution, it is upon plaintiff to establish that defendant had no probable cause.

2. SAME—PRINCIPAL AND AGENT.

   Liability, if any, of corporation for malicious prosecution is for acts of its agent, and it is not liable for acts of prosecuting attorney in examining persons not then its agents or employees, or for what they said or did not say to prosecuting attorney.

3. SAME—PROBABLE CAUSE—FAILURE TO MAKE FURTHER INVESTIGATION.

   If there are sufficient facts to warrant ordinarily prudent person in believing that another has committed crime, failure to make further investigation before instituting prosecution does not constitute want of probable cause.

4. SAME—ADVICE OF PROSECUTING ATTORNEY—DIRECTED VERDICT.

   Where, in action for malicious prosecution, record clearly shows that defendant's agent disclosed to prosecuting attorney all material facts within his knowledge relating to commission of offense by plaintiff, and that in making complaint he acted under prosecuting attorney's direction, probable cause was established as matter of law, and verdict should have been directed for defendant.

   McDONALD, C. J., and POTTER and FEAD, JJ., dissenting.

Appeal from Wayne; Moll (Lester S.), J. Submitted October 26, 1932. (Docket No. 22, Calendar No. 36,674.) Decided June 29, 1933. Rehearing denied October 19, 1933. Motion for reconsideration denied December 6, 1933.

---

\* Continued from Vol. 263.

Case by Clara I. DeVitis against Newcomb-Endicott Company, a Michigan corporation, for malicious prosecution.  Verdict and judgment for plaintiff. Defendant appeals.  Reversed, without a new trial.

*Patrick H. O'Brien, Ben C. Hughes,* and *Gerald K. O'Brien,* for plaintiff.

*Bernard A. Clark (Beaumont, Smith & Harris,* of counsel), for defendant.

CLARK, J.   This is an action of malicious prosecution in which plaintiff had verdict and judgment. Defendant has appealed.  Plaintiff was a teacher in a public school at Detroit.  She married and desired furniture for a home.  She had a charge account at defendant's store and went there for furniture, made her wants known, and was directed to the office of the credit manager, Mr. Reutter, where, on September 18, 1926, she signed in blank a lease, so-called, a title-retaining contract.  There is testimony that it was usual practice at the store, when goods were to go out on title-retaining contract, for the customer to arrange for the purchase and to sign the paper in advance, and, when selections had been made, to write them into the contract.  On or about the date of the contract, plaintiff made selections of furniture.  The items and amounts were carried into the contract.  It also appears that some articles of furniture which had been charged to plaintiff on open account were likewise carried into the contract.  Defendant ceased active business, and its accounts were in charge of Mr. Maynard, who was employed in that regard.  Mr. Reutter was not in defendant's employ after July 30, 1927.  Plaintiff stored the furniture, and later took it to Toronto, where it was disposed of.  Mr. Maynard, learning of what had befallen the

furniture, and after making inquiries, and after having a letter to plaintiff returned, went to the prosecuting attorney, exhibited the contract, and disclosed what he knew. He stated to the prosecuting attorney that he had not seen the contract signed, and that Mr. Reutter had acted for defendant in making the contract. He also gave the information relative to taking the furniture from storage to Toronto. The prosecuting attorney directed that Mr. Reutter and some one from the storage company appear at his office. Mr. Reutter and a Mr. Pemberton of the storage company appeared and were questioned by the attorney, who thereupon directed that complaint be made by Mr. Maynard. Arrest, preliminary examination, commitment for trial, trial, acquittal, and this suit followed.

Plaintiff admitted the signing, denied that she knew it to be a form of title-retaining contract, and testified that she signed her name when requested and because of the change of name by marriage, and that she thought she bought the furniture on open or charge account.

Defendant's contention is that verdict ought to have been directed in its favor as requested, for the reason that there had been a full and fair statement to the prosecuting attorney of all material facts within the knowledge of Mr. Maynard, the prosecuting witness, that the complaint was made on advice and direction of the prosecuting attorney, and that, therefore, probable cause was established as a matter of law, and that plaintiff had failed, as a matter of law, to establish want of probable cause.

In this case, as in like cases, it was upon plaintiff to make a case, to establish three elements. *Swaney* v. *John Schlaff Creamery Co.*, 212 Mich. 567. One of them is that defendant had no probable cause.

The liability here, if any, of the defendant corporation is for the acts of its agent, Maynard. 14A. C. J. p. 770; 38 C. J. p. 454; *Wachsmuth* v. *Merchants National Bank,* 96 Mich. 426 (21 L. R. A. 278). It is not liable for the investigation conducted by the prosecuting attorney in his questioning of Mr. Reutter and Mr. Pemberton, neither of whom was then an agent or employee of this defendant, nor for what they or either of them said, or did not say, to the prosecuting attorney.

In *Swaney* v. *John Schlaff Creamery Co., supra,* it was said:

"If the prosecuting witness has in good faith fully and fairly stated all the material facts within his knowledge to * * * the prosecuting attorney and acted upon his * * * advice, proof of the fact establishes a case of probable cause."

See *Davis* v. *McMillan,* 142 Mich. 391 (3 L. R. A. [N. S.] 928, 113 Am. St. Rep. 585, 7 Ann. Cas. 854).

The record is wholly to the effect that Mr. Maynard disclosed to the prosecuting attorney all material facts relating to the matter within his knowledge. He did not investigate to learn what defense or contention, if any, plaintiff intended to make, nor was he required to do so. *Dunlap* v. *New Zealand Fire & Marine Ins. Co.,* 109 Cal. 365 (42 Pac. 29). He relied on the contract. If he had gone into its antecedents, had checked the original sales slips, he might have learned that the contract had been signed in blank in accordance with store custom, and that plaintiff had had a charge account from which some items were taken into the contract, but he did not do that, and had no such knowledge, nor do we think he was required so to do.

In a note reviewing many cases, 5 A. L. R. 1695, it is said:

"If there are sufficient facts to warrant an ordinarily prudent person in believing that another has committed a crime, failure to make further investigation before instituting a prosecution does not constitute a want of probable cause."

And, at page 1699:

"It does not show a want of probable cause for a person to fail to exhaust all sources of information before instituting a proceeding."

And page 1700:

"It does not show a want of probable cause for a person to fail to verify each item of information received, before proceeding thereon."

And in *Weiden* v. *Weiden*, 246 Mich. 347, where judgment on verdict directed for defendant was affirmed, it was held, quoting syllabus;

"If the facts proven establish probable cause, it is not necessary to defendant's protection that he was familiar with all of them when he made the complaint, but if he acts as a reasonably prudent man should act under the circumstances, he is not to be cast in damages for malicious prosecution even though the accused be innocent."

If defendant had instituted a civil suit upon the contract, such contract bearing, unquestionably, plaintiff's signature, would have been *prima facie* evidence in respect of defendant's rights under it.

*Birdsall* v. *Smith*, 158 Mich. 390, involved prosecution for selling adulterated milk. It was instituted upon a certificate of a department of State showing adulteration. The certificate was *prima facie* evidence of such adulteration. The complaint had been made by an employee of the department. Investigation would have shown the certificate to have been

made in error. Held, no duty rested on such employee to make further investigation of the facts, the certificate being *prima facie* evidence, and judgment for defendant on directed verdict was affirmed.

Maynard was not required in any aspect of this case to make further investigation. He made to the prosecuting attorney full and fair disclosure of all material facts within his knowledge. He acted upon his advice and direction. Probable cause was established as a matter of law. Verdict should have been directed for defendant. *Fleckinger* v. *Taffee,* 149 Mich. 678.

Reversed, with costs, and without new trial.

SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred with CLARK, J.

McDONALD, C. J. (*dissenting*). I cannot agree with Mr. Justice CLARK that the alleged fair disclosure of material facts by the complaining witness to the prosecuting attorney constituted probable cause as a matter of law.

The plaintiff was acquitted in the criminal prosecution because the undisputed evidence showed that she did not sign the contract which was the basis of the action. She signed a contract in blank and the list of goods was afterwards filled in by the defendant. Had this fact been known to the prosecuting attorney he would not have directed the warrant to issue. Mr. Maynard, who made the complaint, was not in the defendant's employ when the contract was executed. Mr. Reutter, who was then credit man for defendant, witnessed its execution. However, Mr. Maynard knew that the custom in contract merchandise accounts was to have the contract signed in blank and the list of goods filled in later. Mr. Reutter explained the reason for this custom. Knowing the custom and that Reutter had

witnessed the contract, Maynard easily could have ascertained if it had been signed in blank. This information, readily ascertainable, would have negatived the plaintiff's guilt. Fairness and good faith required that he obtain this information from Mr. Reutter and disclose it to the prosecuting attorney. At least it was for the jury to say whether Mr. Maynard reasonably inquired into the facts and circumstances before making his charges to the prosecuting attorney. The circuit judge was right in so holding.

The defendant claims that the prosecuting attorney made an independent investigation before ordering the warrant to issue. This is disputed by the plaintiff. Mr. Maynard testified that on his first visit to the prosecuting attorney he informed him that Mr. Reutter knew all about the execution of the contract; that the prosecuting attorney requested him to bring Reutter to the office; that he did so, and after talking with Reutter the warrant was issued. Reutter did not testify to being at the prosecutor's office, and the testimony of the prosecuting attorney indicates that the only time he saw Reutter and talked to him was after the plaintiff's arrest when he was brought to the office to make an affidavit for her extradition. The facts being disputed, it was for the jury to determine the claim of an independent investigation.

We think the court did not err in leaving the question of probable cause to the jury.

During the trial the court ruled that the plaintiff's acquittal on the criminal charge was conclusive evidence that she was not guilty, and struck out testimony of Mr. Maynard that he believed an offense had been committed.

As no error is assigned on this ruling, the question is not here for consideration. However, in fairness

to the trial court, it should be said that he corrected the error in his charge and that he liberally permitted all the facts to be shown on which the prosecuting witness based his belief that a crime had been committed.

Other questions argued by defendant and not discussed in this opinion have been considered and found to be without merit.

The jury rendered a verdict in favor of the plaintiff for $36,000. We have examined the testimony in regard to her damages and think the verdict is excessive. As we find no other reversible error, if the plaintiff will remit $18,000 from the judgment by remittitur, filed in ten days from this date, the judgment should stand affirmed; otherwise a new trial should be granted.

POTTER and FEAD, JJ., concurred with McDONALD, C. J.